Slip Op. 13–27

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| WUHU FENGLIAN CO., LTD., and SUZHOU SHANDING HONEY PRODUCT CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> - and - <br><br> AMERICAN HONEY PRODUCERS ASSOCIATION, and SIOUX HONEY ASSOCIATION, <br><br> Defendant-Intervenors. | **Before: Gregory W. Carman, Judge** <br><br> **Court No. 11-00045** |

## OPINION & ORDER

[Judgment will be entered sustaining the Department of Commerce's redetermination on remand to rescind Plaintiffs' new shipper reviews.]

Dated: February 27, 2013

Yingchao Xiao, Lee & Xiao, of San Marino, CA for Plaintiffs.

Courtney S. McNamara, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for Defendant.  With her on the briefs were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, Reginald T. Blades, Jr., Assistant Director, and Sapna Sharma, Attorney, United States Department of Commerce, of Counsel.

Michael J. Coursey, R. Alan Luberda, and Benjamin Blase Caryl, Kelley Drye & Warren LLP, of Washington, DC for Defendant-Intervenors.

**Carman, Judge:** Plaintiffs Wuhu Fenglian Co., Ltd. and Suzhou Shanding Honey Product Co., Ltd (collectively "Plaintiffs"), exporters of honey from the People's Republic of China ("PRC"), challenge a redetermination decision by the U.S. Department of Commerce ("Commerce") following a remand from this Court.  In the Remand Redetermination, Commerce accepted into the administrative record certain documents that Plaintiffs submitted, as required by the Court.  Upon evaluation of the record, including the new documents, Commerce determined to rescind antidumping duty new shipper reviews requested by Plaintiffs.  See Final Results of Redetermination Pursuant to Court Remand ("Remand Redetermination"), ECF No. 82.  The Court sustains Commerce's remand redetermination because it is supported by substantial evidence on the record and is otherwise in accordance with law.

BACKGROUND

Plaintiffs requested new shipper reviews on honey from the People's Republic of China on February 4, 2010.  Remand Redetermination at 2.  Commerce published a Preliminary Determination on September 10, 2010, rescinding the new shipper reviews on the grounds that the sales made by Plaintiffs did not appear to be bona fide.  Honey From the People's Republic of China: Preliminary Intent to Rescind New Shipper

Reviews, 75 Fed. Reg. 55,307, 55,308 (Sep. 10, 2010) ("Preliminary Determination").

Commerce's Final Determination came to the same conclusion.  Honey From the

People's Republic of China: Final Results and Rescission of Antidumping Duty New

Shipper Reviews, 76 Fed. Reg. 4,289, 4,290 (Jan. 25, 2011) ("Final Determination").

Plaintiffs then challenged the Final Determination by this lawsuit.

## I.      Remand to Commerce

On April 25, 2012, the Court issued Slip Op. 12-57, remanding the case to

Commerce for redetermination.  ECF No. 80.  In the remand opinion, the Court required

Commerce to accept certain documents from Plaintiffs that Commerce had initially

rejected.  Plaintiffs had submitted a number of documents by way of rebutting certain

data from U.S. Customs and Border Protection ("CBP") that was placed into the

administrative record by Commerce.  Commerce rejected the rebuttal as untimely.  In

the absence of any statutory or regulatory deadline for rebutting a filing by Commerce,

the Court held that Commerce had wrongly rejected the rebuttal, which had been

submitted only 20 days after Commerce's administrative record filing and almost four

months before Commerce issued the final results.  See Slip Op. 12-57 at 10–14.  The

Court therefore required Commerce to accept the rebuttal materials and issue a remand

redetermination taking account of them.  The Court declined, however, to require

Commerce to supplement the remand record with certain factual information,

consisting of a protest lodged with CBP by an unrelated exporter of honey from the

PRC, which Plaintiffs did not submit during the new shipper review.  See id. at 15–16.

## II.    Redetermination on Remand

On remand, Commerce noted that the rebuttal evidence submitted by Plaintiffs

contrasted with CBP data Commerce had placed in the record regarding imports of

honey from the PRC during the period of review ("POR").  In resolving the conflict in

the data, Commerce determined that Plaintiffs' submission were not as reliable as the

CBP data, and therefore reached the same conclusion as in the Final Results: that

Plaintiffs' sales were not bona fide and that Commerce would thus rescind the new

shipper reviews.  Remand Redetermination at 2, 4-5.

### A.    Honey Export Statistics from PRC

Plaintiffs submitted honey export statistics published by the Ministry of

Commerce ("MOC") of the PRC for May 2009, indicating that no honey was exported to

the United States that month.  Id. at 5.  According to Plaintiffs, this report shows the

CBP data to be inaccurate, since the CBP data showed entries of PRC honey into the

United States during May 2009.  Id.

Commerce stated that it has a routine method to resolve situations in which it

faces "two conflicting data sources": Commerce gives preferences to "primary data

sources, where the Department knows the methodology used to collect the data." Id.

at 6.

Applying this analysis, Commerce determined that it would not rely on the PRC

honey report because the record lacked information as to how the PRC data was

collected and collated; by contrast, the CBP data contained "the actual entry

documentation for the shipment, including the Customs 7501 form, invoice, and bill of

lading." Id.  Commerce specifically noted that the record did not show the definition of

"honey" employed by the MOC, "which, alone, could explain why the PRC MOC data

indicate no exports." Id. Commerce also noted that the record did not reveal whether

the PRC honey report was based on primary export documents, secondary trade

reports, or some other source or sources.  Id.  Finally, Commerce noted that "shipping

lag times" might account for the absence of exports in the honey report at a time when

the CBP data showed entries of honey from the PRC.  Id.

### B.   Website and Advertising Printouts from PRC Exporter

Second, Plaintiffs submitted printouts from the website and internet

advertisements of a certain Chinese honey exporter whose identity is Business Propriety

Information and who will therefore be referred to simply as the "Confidential

Exporter." Id. at 7.  Sales into the United States by the Confidential Exporter were

reported in the CBP data that Commerce used in its bona fide analysis.  Id.  Plaintiffs

claim the web printouts and advertisements show that the Confidential Exporter did

not export to the United States during the relevant time period, and that as a result the

CBP data must be incorrect.  Id.

Commerce again applied its technique for resolving questions about the relative

reliability of conflicting documents.  Commerce determined that no evidence showed

when the website printouts were created, whether they were ever updated (and, if so,

when), and whether the statements in the documents related to the POR for these new

shipper reviews.  Id.  As a result, Commerce determined that the website and

advertising printouts from the Confidential Exporter did not discredit the CBP data.  Id.

## C.    PIERS Data from United States Government

Third, Plaintiffs submitted data from the United States Government Port Import

Export Reporting System ("PIERS") which, according to Plaintiffs, show that no honey

from the PRC was entered into the United States during May, June, and July 2009.  Id.

Commerce acknowledged that the PIERS data showed "no entries of honey from the

PRC to North America during May 2009."  Id.  However, Commerce determined that

"without knowing the methodologies used to gather and analyze the PIERS data," it

could not be given as much weight as the CBP data.  <u>Id.</u> at 8.  Noting that the CBP data

contains entry documentation including the Customs 7501 form, invoice, and bill of

lading, Commerce determined that "something as simple as a difference in the

collection methodologies between the sources or the different level of specificity of the

underlying source of the PIERS data" could explain the discrepancy between the PIERS

and CBP data.  <u>Id.</u>  In this regard, Commerce noted more specifically that PIERS data

"are gathered from entries on ships' manifests," while the CBP data incorporated "a

variety of actual import documentation," including the Customs entry paperwork that

determines the "legal description" of imported goods.  <u>Id.</u> at 18.  Having already

addressed the issue of conflicts between PIERS data and CBP data in other cases,[1] and

having developed a policy of giving more weight to CBP data in the case of such a

---

[1] This particular issue was already addressed in the Final Determination of Commerce, issued prior to the Court's remand in this case, and the accompanying Issues and Decisions Memorandum.  The Court's remand did not invalidate this analysis.  Commerce also addressed the precise question of whether to rely upon PIERS data or CBP data in the case of a conflict between the two in a 2007 determination, <u>Preliminary Recission of Antidumping Duty Administrative Review: Certain Hot-Rolled Carbon Steel Flat Products from the People's Republic of China</u>, 72 Fed. Reg. 32,072 (June 11, 2007).  In that case, Commerce articulated a policy of weighing CBP data more heavily than conflicting PIERS data since the CBP data is based on primary import documentation, including entry paperwork that provides the appropriate legal classification of the goods contained in the entry, while PIERS data is simply drawn from ship manifests.  Remand Redetermination at 18; Defendant's Response to Plaintiff's Comments upon Commerce's Final Remand Redetermination at 17-18, ECF No. 95.

conflict, Commerce found that the conflicting PIERS data provided no reason to

abandon use of the CBP data in this instance.  Id. at 8.

     **D.**    **National Honey Reports from the USDA**

     Finally, Plaintiffs submitted National Honey Reports from the United States

Department of Agriculture ("USDA") for December 2008, June and July 2009, and

September through November 2009.  Id.  The USDA National Honey Reports contained

information at variance with the CBP data as to the price and quantity of honey entered

into the United States from the PRC during the period of review; Plaintiffs sought to

undercut Commerce's reliance on the CBP data by introducing the honey reports into

the record.  Id. at 8-9.  However, Commerce found the record devoid of evidence as to

the methodology by which the honey reports were collected.  Id.  Commerce also noted

that it was not even clear whether the data contained in the honey reports was related

to the relevant sales within the POR.  Id.  Commerce therefore determined that the

USDA honey reports could not be given as much weight as the CBP data, which it

decided to continue to rely upon.

     In the end, then, Commerce determined that the CBP data was the most reliable

of the available data regarding honey imports from the PRC to the United States during

the POR, and therefore found no reason in the newly-submitted data to alter its analysis

of whether Plaintiffs' sales were <u>bona fide</u>.  Consequently, Commerce determined again

that Plaintiffs' sales were not <u>bona fide</u> and affirmed its recission of the new shipper

reviews.

### JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1581(c), and

19 U.S.C. §§ 1516a(a)(1), (a)(2)(B)(iii).  In reviewing Commerce's remand

redetermination, the Court will "hold unlawful any determination, finding, or

conclusion found . . . to be unsupported by substantial evidence on the record, or

otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

### ANALYSIS

Plaintiffs raise three main critiques of Commerce's Remand Redetermination.

First, Plaintiffs attack the procedural propriety of the Remand Redetermination,

contending that it is "unacceptably incomplete" owing to Commerce's refusal on

remand to accept into the record the CBP Protest filed by an unrelated importer.

Comments on the Department of Commerce's Final Results of the Redetermination

Pursuant to Court Remand ("Plaintiffs' Comments") at 3, ECF No. 85.

In a similar vein, Plaintiffs contend that the substance of the Remand

Redetermination is "unacceptably inaccurate" and therefore must be overturned

because Commerce acted unfairly in failing to consider the contents of the rejected CBP

Protest.  Id.

Plaintiffs also assert that, in any case, Commerce acted contrary to the weight of

the record evidence in finding that the PRC honey export data, website and advertising

printouts from the Confidential Exporter, PIERS data, and USDA honey reports were all

less reliable than the CBP data.  Id. at 26-28.

The Court finds that each of these critiques fails to undermine the Remand

Redetermination for the reasons set forth in detail below.

I.      **Commerce Properly Refused to Accept the CBP Protest**

Plaintiffs do not argue that they submitted the CBP Protest documents into the

record in a timely fashion.  Plaintiffs instead offer several reasons why Commerce was

wrong to refuse, on remand, to reopen the record and accept the CBP Protest despite its

untimely submission.

Plaintiffs assert that Commerce "had a reasonable amount of time in which to

consider the information contained in the CBP Protest" because the Court gave

Commerce sixty days to submit its Remand Determination.  Id. at 6.  Plaintiffs also insist

that Commerce rejected the CBP Protest with no lawful basis, "as doing so unduly

hampered Commerce's ability to accurately determine the dumping margins" and

improperly substituted finality for accuracy.  See id. at 7-10.

    Plaintiffs also argue that the Court should apply a doctrine that would

constructively define the administrative record in this way:  the CBP Protest, since it

was filed before another federal government agency, was therefore "a matter of federal

government record" that was "already in the government's [i.e. Commerce's]

possession," putting Commerce "on judicial notice of the content and substance of the

CBP Protest."  Id. at 7.  Plaintiffs eventually rise to what may be their most creative

expression of this argument, urging the Court that, "because the CBP Protest is a

byproduct of and pertains directly to the accuracy of the CBP data used by Commerce,

the substance of the CBP Protest is within, or at the very least an essential and

inseparable appurtenance of, the original administrative record."  Id. at 10.

(Presumably, the natural consequence of these last two arguments would be to redefine

the CBP Protest as being a part of the record already, although Plaintiffs leave that

deduction for the Court to reach on its own.)

    In explaining why these arguments fail, it is appropriate to begin by pointing out

two relevant prior decisions in this case.  On May 25, 2011, the Court entered an order

denying Plaintiffs' First Motion to Stay.  See ECF No. 10 (motion), ECF No. 28 (order).

Plaintiffs' motion sought to delay the case until such time as a final decision was

rendered on the CBP Protest.  The Court indicated that it was denying the stay in part

"[u]pon consideration of . . . the responses in opposition filed by Defendant and

Defendant-Intervenor."  See Order, ECF No. 28.  The opposition filings referenced in the

order focused almost entirely on the argument that Plaintiffs' motion improperly

sought to stall the case until the CBP Protest was decided.   See generally Defendant's

Response in Opposition to Plaintiffs' Motion to Stay, ECF No. 25; Defendant-

Intervenors' Response in Opposition to Motion to Stay, ECF No. 26. Both defendant-

side parties argued that such a stay would function to surreptitiously introduce the

contents of the CBP Protest into the administrative record, which would be improper

because the CBP Protest was not filed until after Commerce's final determination and

therefore was not before the Department when it rescinded Plaintiffs' new shipper

reviews.

        Second, the Court's order remanding this case to Commerce for redetermination

incidentally disposed of a further attempt by Plaintiffs to introduce the CBP Protest into

the administrative record.  See Plaintiffs' Motion to Supplement Administrative Record,

ECF No. 73.  The Court denied the motion, and also indicated that it would not require

Commerce to add the CBP Protest to the administrative record on remand.  (See Slip-

Op. 12-57 at 15-16 (stating that the Court was "disinclined to obligate Commerce to

accept or consider factual information that was not presented during the underlying

administrative proceeding").)

For the third (and final) time, the Court now rejects Plaintiffs' attempts to place

the CBP Protest at the center of this case.  The Court finds that Commerce's decision not

to reopen the administrative record on remand was a completely reasonable exercise of

its authority.  As Commerce explained to Plaintiffs, reopening the record at the time

Plaintiffs' request was filed would have hampered Commerce's ability to complete the

remand proceeding in the time allotted by the Court, and Defendant-Intervenors would

not have had a fair chance to respond to the CBP Protest adequately.  Defendant's

Response to Plaintiff's Comments upon Commerce's Final Remand Redetermination

("Defendant's Response") at 9, ECF No. 95.

Plaintiffs also urge the Court to misapply the "NTN / Timken doctrine," which in

certain circumstances requires that the Department accept late factual submissions in

order to properly weigh the need for accuracy against the need for finality.  See NTN

Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995); see also Timken U.S.

Corp. v. United States, 434 F.3d 1345, 1353–54 (Fed. Cir. 2006).  That doctrine is

inapplicable here because the CBP Protest is not the kind of untimely factual submission

that falls within the NTN / Timken doctrine, which "stress[es] that, at the preliminary

results stage, Commerce abuses its discretion where it refuses to let a respondent

establish an accurate dumping margin by correcting mistakes in its response." <u>Fischer</u>

<u>S.A. Comercio, Industria and Agricultura v. United States</u>, 34 CIT ___, ___, 700 F. Supp.

2d 1364, 1375 (2010).  The doctrine is not as broad as Plaintiffs urge.  It is limited to the

correction of mistakes in timely factual submissions to ensure an accurate assessment at

the final determination stage, which is inapplicable here.  And in any case the doctrine

has never been extended to require Commerce to reopen the record in a relatively brief

remand redetermination in which the Court, rather than the trade laws, provides the

deadlines.  The Court declines to extend the <u>NTN</u> / <u>Timken</u> doctrine in that manner

today.

     As to Plaintiffs' contentions that the CBP Protest should be considered to be

constructively within the administrative record due to the fact that it is tangentially

related to documents previously considered in the record before Commerce, Plaintiff

cites no authority for this concept, apart from using the legalese "judicial notice."

However, the briefest of references to Black's Law Dictionary reveals that judicial notice

involves "[a] court's acceptance, for purposes of convenience and without requiring a

party's proof, of a well-known and indisputable fact; the court's power to accept such a

fact."  Black's Law Dictionary, 9th Ed., at 923.  A party may not invoke an inherent

power of the Court, especially to assert rights against Commerce, much less to resolve a

contested matter such as the classification of entries in a CBP Protest.  The Court also

rejects Plaintiffs' notion that the Court may, essentially by fiat, interpret the

administrative record to include a protest filed after Commerce reached its final

determination on that record.

　　　For all of these reasons, the Court concludes that Commerce acted appropriately

when it rejected the CBP Protest from the record on remand, and consequently upholds

that portion of the Remand Redetermination.

**II.**　　**Commerce Correctly Declined to Consider the Contents of the CBP Protest**

　　　The Court also rejects Plaintiffs' argument that Commerce reached an

improperly inaccurate result because it refused to examine the contents of the CBP

Protest.  This point can be seen as moot given the Court's decision that Commerce

properly rejected the CBP Protest from the remand record, but the Court believes it is

still appropriate to briefly examine this contention in the alternative.

　　　Plaintiffs describe the purported relevance of the CBP Protest this way:

> In a nutshell, an importer unrelated to Plaintiffs made entries of a product
> it described as non-subject merchandise.  CBP reclassified it as honey.
> Commerce relied on the data from these entries in its unfavorable analyses
> of the Plaintiffs' U.S. sales.  The unrelated importer subsequently filed an
> official protest, arguing that their [sic] entries were not of honey, and
> supporting their [sic] argument with laboratory analyses.  The results of

this protest are pending.

Plaintiffs' Comments at 11-12.

The Court refuses to require that Commerce examine the merits of any CBP

Protest related to CBP data it wishes to use before it may rely on such CBP data in

determining the final results of a new shipper review.  Such a rule would, as Commerce

rightly worries, either force Commerce to consider the content of protests and intrude

on the statutory authority of Customs, or endlessly delay new shipper reviews while

Commerce deferred to CBP and the courts to finalize classification questions.

Defendant's Response at 10-11.  The statutory presumption of correctness that attaches

to Customs' classification decisions would also be weakened and, potentially, rendered

a nullity.

The Court immediately sees several significant practical concerns stemming from

such a precedent.  Commerce would likely be prevented, in practice, from relying on

CBP data.  Reliance on CBP data would <u>always</u> raise the potential that a future protest

filed after Commerce's final determination would effectively undo the Commerce

proceeding, and require Commerce to reopen its proceeding and record pending (1) the

outcome of the protest before Customs, (2) any appeal of a denial by Customs to the

Court of International Trade, (3) the conclusion of any appeals of a CIT decision to the

Court of Appeals for the Federal Circuit and the Supreme Court, and (4) the eventual

final legal settlement of all issues related to proper customs classification of the

involved goods.  This would be a deeply problematic result.

Not only that, but the Court fears that such a rule could give importers who

sought a new shipper review a perverse ability to tamper with Commerce's

proceedings.  By protesting before Customs the classification of entries that formed the

basis of new shipper reviews that they initiated before Commerce, importers could

force Commerce into conflict with Customs, potentially obtain contradictory

determinations from the two agencies, and render the time limits on new shipper

reviews a virtual nullity.

Plaintiffs contend that, "[c]onsidering what the Plaintiffs stand to lose vis-a-vis

what can only be a minor and nonrecurring inconvenience to Commerce or CBP of

having to wait to wind up their procedures, . . . the minimum of fairness requires that

all involved parties at least wait for the results of the CBP Protest."  Plaintiffs'

Comments at 12.  The Court disagrees for the reasons described above, and affirms

Commerce's decision to decline to consider the contents of the CBP Protest in its

Remand Redetermination.

### III.    Commerce's Reliance on the CBP Data Rather Than Plaintiffs' Submissions

The Court finds that Commerce properly considered the PRC honey export data, website and advertising printouts from the Confidential Exporter, PIERS data, and USDA honey reports that Plaintiffs' submitted.  Commerce's decision that these sources of data were all less reliable than the CBP data was supported by the record evidence and otherwise in accordance with law, and is therefore affirmed.

### A.    Commerce Properly Found the CBP Data More Reliable than the PRC Honey Export Data

Plaintiffs attack on Commerce for weighing the CBP data as more reliable than the PRC honey export data fails because it is (1) based on assumptions that are not part of the record and (2) adopts a backwards approach that Commerce should have the burden of proving unreliability of record data, rather than Plaintiffs having a burden to demonstrates the reliability of data they placed in the record.  Commerce correctly rejected these contentions, and the Court therefore affirms the agency's decision to rely on the CBP data over the PRC honey export data.

Plaintiffs begin by arguing that "Commerce was fully aware that the MOC is a Chinese Government entity essentially equivalent to Commerce."  Plaintiffs' Comments at 15.  Plaintiffs rely on "common knowledge" and (again) "judicial notice" to support their assertion that the "MOC obtains its data directly from Chinese customs

documentation." Id.  Plaintiffs do not cite (and the Court has not located) any evidence

in the record to establish the truth of these assertions.  Plaintiffs also urge that it "was

improper for Commerce to treat China's data with any less deference than it would the

data of other modern countries." Id.  "[T]he sensible assumption," Plaintiffs contend,

"is that official PRC government data—which the MOC data is—is collected by PRC

government officials at the involved ports of export." Id. at 17.

        The remainder of Plaintiffs arguments on the PRC honey export data are

suggestions that Commerce failed in a duty to build an adequate record as to the data's

reliability.  Plaintiffs suggesting that "a minimal and reasonable inquiry by Commerce

would have revealed" the reliability of the data, id. at 15; that it was "unreasonable" for

Commerce to question whether the MOC data came from primary sources "when there

is nothing on the record to suggest as much," id. at 17; and that "Commerce had ample

time in which to make basic inquiries in order to satisfy its concerns" about the MOC

data, id.

        Plaintiffs miss the point with these arguments.  The Court does not review

Commerce's decisions to ensure that they are based on sensible assumptions, but rather

for evidentiary support in the administrative record and consistency with law.

19 U.S.C. § 1516a(b)(1), (B)(i) (the Court will "hold unlawful any determination,

finding, or conclusion found . . . to be unsupported by substantial evidence on the

record, or otherwise not in accordance with law").  Indeed, any Commerce decision that

was based on assumptions—sensible or otherwise—would be very unlikely to survive a

substantial evidence challenge before this Court.

Plaintiffs also mistakenly press for the Court to impose a duty on Commerce to

assemble the administrative record of substantial evidence upon which its decisions

must be made.  However, it is Plaintiffs—not Commerce—who bear the burden of

creating a record of relevant data in a timely fashion.  Alloy Piping Prods., Inc. v.

United States, 26 CIT 330, 349-50, 201 F. Supp. 2d 1267, 1284 (2002) ("The general rule"

is that "the respondent bears the burden and responsibility of creating an accurate

record within the statutory timeline").  Plaintiffs cite no authority that would oblige

Commerce to gather, on behalf of Plaintiffs, information for the record to ensure that

Commerce has a complete understanding of the methodology behind Plaintiffs'

submitted data.  Nor is the Court aware of any such authority.

The Court therefore finds that Commerce fulfilled its duty in regard to

examination of the MOC data: Commerce considered the nature of the data, the

available information as to the veracity and weight the data should be accorded, and

then made a reasonable, evidence-supported decision to rely instead on the CBP import

data that conflicted with the MOC data. Remand Redetermination at 5-6, 10-13;

Defendant's Response at 13-14. The Court affirms that determination as supported by

substantial evidence and in accordance with law.

> **B.      Commerce Properly Found the CBP Data More Reliable than the
> Website and Advertising Printouts from the Confidential Exporter**

Plaintiffs have similarly thin grounds to attack Commerce's treatment of the

printouts from the website of the Confidential Exporter. In the case of these documents,

Plaintiffs' arguments are founded on the misapprehension that Commerce did "not give

the printouts of the web site of the PRC exporter consideration." Plaintiffs' Comments

at 20. Plaintiff cites instances in which Commerce has relied on similar documents and

quibbles with Commerce for interpreting ambiguous language in the documents as

suggesting that the Confidential Exporter might, in fact, export to the United States. <u>Id.</u>

at 18-19.

The Remand Redetermination makes it clear that Commerce did, in fact, consider

the printouts from the Confidential Exporter. Remand Redetermination at 14-16.

Although Plaintiffs wish the Court to substitute Plaintiffs' weighing of those documents

for Commerce's weighing, that is not the nature of the Court's inquiry. Instead, the

Court finds that Commerce considered the documents and found no evidence in the

record from which it could conclude that they were more reliable than the CBP data

with which they directly conflicted.  Id.  Therefore, the Court affirms Commerce's

decision in the Remand Redetermination not to rely on the Confidential Exporter's

website printouts over the CBP data.

> **C.      Commerce's Reliance on the CBP Data Instead of the PIERS Data Was**
> **Supported by Substantial Evidence**

In challenging the Department's decision to accord more weight to the CBP data

than to the PIERS data, Plaintiffs assert that, despite a long history of relying on PIERS

data, Commerce departed from its practice and did not give Plaintiffs' PIERS

submissions full consideration in this case.  Plaintiffs' Comments at 22 ("Commerce

knows the PIERS data is probative"), 23 (it is unreasonable for "Commerce not to give

the PIERS summaries full consideration").  Plaintiffs claim repeatedly that Commerce

has a long practice of obtaining and using PIERS data, is intimately familiar with the

collection methodologies underlying PIERS data, knows that it is as accurate as CBP

data, and accords it the same weight as CBP data.  Id. at 20-23.

Plaintiffs also argue that, absent specific evidence that the PIERS data were

unreliable, Commerce should be forced to either rely on them or obtain the underlying

data to resolve any questions about their adequacy.  Id. at 20 ("there is nothing in the

record to indicate that [PIERS data] is any less reliable or accurate than the similarly

collected CBP data"), 21 (Commerce, if "sincerely concerned about the corroboration

provided by the entry documentation," could have affirmatively obtained it).

Plaintiffs' assertions are unconvincing.  Plaintiffs have it backwards when they

suggest that Commerce must rely on the PIERS data absent evidence that it is

unreliable; in fact, Commerce must find substantial evidence to support any data upon

which it rests its decision.  The Court therefore rejects this attack by Plaintiffs.  The

Court also finds that Commerce gave full and careful consideration to the PIERS data.

Commerce explained that it found the CBP data more reliable because the CBP data was

drawn from a variety of entry documents, including CBP documents that determine the

legal description of merchandise contained in entries, while the PIERS data was

obtained only from ship manifests and did not have the same legal weight as the CBP

data.  Remand Redetermination at 18.  Commerce therefore reasonably applied its long-

standing policy of giving weight to CBP data over PIERS data in situations where the

data conflict.  Id.  Commerce explained that its reliance on PIERS data in past

proceedings never found it more reliable than conflicting CBP data.  Id. at 17-18.  Far

from failing to consider the PIERS data, Commerce fully considered it but came to a

conclusion that was not to Plaintiffs' liking.  However, the agency's decision was

supported by substantial evidence in the record and is therefore affirmed.

>    **D.     Commerce's Reliance on the CBP Data Instead of the USDA Honey
>            Reports Was Also Supported by Substantial Evidence**

Plaintiffs claim that the USDA honey reports reveal that the CBP data are flawed

as to price and quantity.  Plaintiffs' Comments at 24.  In attacking Commerce's decision

not to rely on the USDA honey reports, Plaintiffs contend that Commerce should be

"considered aware of the data collection methodology and content" of the USDA

reports since Commerce and the USDA are "each part of the same branch of the federal

government" and are therefore "parts of the same entity."  Id. at 23-24.  From this basis,

Plaintiffs argue that Commerce refused to give the USDA honey reports "serious

consideration," since it did not rely on them despite a lack of evidence in the record to

suggest that the USDA reports were flawed.

Again Plaintiffs mischaracterize Commerce's determination.  Commerce in fact

gave careful consideration to the honey reports.  This is demonstrated by Commerce's

decision not to rely on the reports because the record lacked evidence about the time

span during which the information was collected or the Harmonized Tariff Schedule

numbers employed in the reports.  Remand Redetermination at 9.  As a result,

Commerce was unable to tell whether the honey reports even related to the POR as

issue.  Id.  Commerce also points out again that it is Plaintiffs that bear the burden of

demonstrating the reliability of the USDA reports, not Commerce.  Id. at 20-21;

Defendant's Response at 20.  Given that Commerce closely evaluated the substantial

evidence in the record when determining that the USDA honey reports were not as

reliable as the CBP data, the Court affirms that decision.

### E.      Commerce's Redetermination Is Supported by Totality of Evidence

Plaintiffs argue that the totality of the evidence overcame any presumption that

the CBP data were accurate.  Plaintiffs' Comments at 26-28.  Since the CBP data

Commerce chose to rely upon conflicts with all other information on the record, goes

this argument, the agency's "preference for and reliance on CBP data [became]

unreasonable."  Id. at 27.  Plaintiffs urge the Court to overturn the redetermination

because all of the sources in the record "are consistent in that they all point to the same

conclusion, that the CBP data is wildly incorrect."  Id.

Plaintiffs overstate their argument.  While each of the four sources of data

submitted by Plaintiffs conflicts with the CBP data in one way or another, that does not

mean that these four data sources agree with each other about the nature of imports of

PRC honey into the United States during the POR, or whether Plaintiffs' imports were

bona fide.  Commerce is not required to use perfect data, but to make careful

determinations based on the most reliable data in the record.  The Court is satisfied that

Commerce has done so here.  The Court rejects the notion that the mere presence of

numerous less reliable data sets in the record can automatically impugn the reliability of

the best record evidence.

Plaintiffs' remaining contentions have been examined and found without merit.

<sub>C</sub>ONCLUSION

For the reasons set forth in this opinion, the Court finds that Commerce's

Remand Redetermination is based upon substantial evidence in the record and is in

accordance with law, and it is therefore

**ORDERED** that the Remand Redetermination be, and hereby is, SUSTAINED.

      /s/Gregory W. Carman
      Gregory W. Carman, Judge

Dated:   February 27, 2013
            New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **WUHU FENGLIAN CO., LTD., and SUZHOU SHANDING HONEY PRODUCT CO., LTD.,**<br><br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>**UNITED STATES,**<br><br>　　　　　　Defendant,<br><br>　　　- and -<br><br>**AMERICAN HONEY PRODUCERS ASSOCIATION, and SIOUX HONEY ASSOCIATION,**<br><br>　　　　　　Defendant-Intervenors. | **Before: Gregory W. Carman, Judge**<br><br>**Court No. 11-00045** |

### <u>JUDGMENT</u>

This case having been submitted for decision, and the Court, after due deliberation, having rendered a decision herein, it is hereby

**ORDERED** that the motion of Plaintiffs Wuhu Fenglian Co., Ltd. and Suzhou Shanding Honey Product Co., Ltd. for judgment on the agency record is denied, and the redetermination pursuant to remand of the Department of Commerce is sustained.


　　　　　　　　　　　　　　　　　　　　   /s/Gregory W. Carman
　　　　　　　　　　　　　　　　　　　　　Gregory W. Carman, Judge

Dated:　February 27, 2013
　　　　　New York, New York